**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

ASHLEY BROWN GARCIA                    :        Case No: ___3:20-CV-474___
2401 Mundale Ave
Dayton, Ohio 45420                     :                Judge Walter H. Rice

        Plaintiff,                     :

    v.                                 :


CONCEPT SCHOOLS                        :        **COMPLAINT FOR**
Statutory Agent:                                **RETALIATION,**
Sedat Duman                            :        **EMPLOYMENT**
1336 Basswood Road                              **DISCRIMINATION,**
Schaumburg, Illinois 60173             :        **AIDING AND ABETTING**
                                                **DISCRIMINATION,**
SEDAT DUMAN                            :        **WRONGFUL DISCHARGE,**
President/CEO                                   **AND WORKPLACE TORTS**
Concept Schools                        :        **WITH JURY DEMAND**
1336 Basswood Road
Schaumburg, Illinois 60173             :

TAMARA LIEB                            :
Director of Primary Education
Concept Schools                        :
1336 Basswood Road
Schaumburg, Illinois 60173             :

HORIZON SCIENCE ACADEMY -             :
DAYTON ("HSA")
4751 Sue Ann Boulevard                :
Dayton, Ohio 45405
                                       :
ALYCE PENNINGTON
Principal                             :
Horizon Science Academy - Dayton
4751 Sue Ann Boulevard                :
Dayton, Ohio 45405

1

ANDREW GLENN                                          :
Assistant Principal
Horizon Science Academy - Dayton                      :
4751 Sue Ann Boulevard
Dayton, Ohio 45405                                    :


LA'DORA HOWARD                                        :
℅ Horizon Science Academy - Dayton
4751 Sue Ann Boulevard                                :
Dayton, Ohio 45405
                                                      :

LA'DORA HOWARD'S MOTHER                               :
℅ Horizon Science Academy - Dayton
4751 Sue Ann Boulevard                                :
Dayton, Ohio 45405


EDUCATIONAL SERVICE CENTER                            :
OF LAKE ERIE WEST
Statutory Agent:                                      :
Craig Burford
8050 North High Street, Suite 150                     :
Columbus, Ohio 43235
                                                      :

SANDRA C. FRISCH                                      :
Superintendent
ESC of Lake Erie West                                 :
2275 Collingwood Boulevard
Toledo, Ohio 43620                                    :
                                                      :
        and
                                                      :

RANAY NUNAMAKER                                       :
Regional Technical
Assistance Representative                             :
2275 Collingwood Boulevard
Toledo, Ohio 43620                                    :


Plaintiff Ashley Brown Garcia ("Ms. Garcia) for her Complaint against Concept Schools,

Sedat Duman, Tamara Lieb, Horizon Science Academy - Dayton, Alyce Pennington, Andrew

Glenn, La'Dora Howard, La'Dora Howard's mother, Educational Service Center of Lake Erie West, Sandra Frisch, and Ranay Nunmaker alleges as follows:

## THE PARTIES

1.    Concept Schools is a management company that provides STEM-focused and college-preparatory education through a network of charter schools.

2.    Sedat Duman is the president/CEO of Concept Schools.

3.    Tamara Lieb is the Director of Primary Education for Concept Schools and HSA-Dayton Principal Alyce Pennington's immediate supervisor.

4.    Horizon Science Academy - Dayton is one of the charter schools managed by Concept Schools.

5.    Alyce Pennington is the Principal of HSA-Dayton.

6.    Andrew Glenn is the Assistant Principal at HSA-Dayton.

7.    La'Dora Howard is a student at HSA-Dayton.

8.    La'Dora Howard's mother was involved in the January 17, 2020 incident that lead to Ms. Garcia's termination.

9.    Educational Service Center of Lake Erie ("ESC of Lake Erie West") is a funding sponsor of charter schools throughout Ohio, including HSA-Dayton.

10.    Sandra C. Frisch is the Superintendent of ESC of Lake Erie West and Ranay Nunamaker's immediate supervisor.

11.    Ranay Nunmaker is a Regional Technical Assistance Representative who worked with HSA-Dayton.

## JURISDICTION AND VENUE

12.     This Court has federal question jurisdiction to hear this case because it arises under the laws of the United States. Ms. Garcia's Second and Third Causes of Action arise under Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000e et seq.

13.     Ms. Garcia's First, Second, Third, and Fourth Causes of Action arise out of Ohio R.C. §§ 4113..52 amd 4112.02 (I) and (J). Ms. Obergefell's Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Causes of Action arise under Ohio common law. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Ms. Garcia's state law claims because they are so related to the federal claim, over which this Court has original jurisdiction, that they form part of the same case or controversy.

14.     Venue is proper in the Southern District of Ohio, Western Division, pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Ms. Garcia's claims occurred in Dayton, Ohio located in the Southern District of Ohio, Western Division.

## STATEMENT OF THE FACTS

**Ms. Garcia filed a whistleblower complaint against Principal Pennington with ESC of Lake Erie West after she failed to respond to Ms. Garcia's plea to provide her and her fellow teachers protection from violent students**

15.     Ms. Garcia signed her original teaching contract for her Elementary School Art Teacher position with HSA-Dayton on July 25, 2017.

16.     In 2017 and 2018, Ms. Garcia received good performance reviews.

17.     In December, 2019, Ms. Garcia and her fellow teachers were under a lot of stress because they were being physically attacked by violent students. Although Ms. Garcia and her colleagues asked Principal Pennington to take steps to protect them, Principal Pennington did not

respond. Instead of spending money on a school safety officer or other security measures, Principal Pennington instead spent money on professional development.

18.     On December 13, 2019, Ms. Garcia became so frustrated with her misbehaving students that she said that if they did not stop misbehaving "she might kill herself." Although Assistant Principal Andrew Glenn talked to Ms. Garcia about her comment, he told her that he understood her frustration because "we've all been through it." Significantly, Assistant Principal Glenn did not discipline Ms. Garcia but, instead, simply encouraged her to do her best to work through her frustration.

19.     On January 8, 2020, Ms. Garcia filed a whistleblower company against Principal Pennington with Ranay Nunamaker, a Regional Technical Assistance Representative employed by ESC of Lake Erie West.

20.     Upon information and belief, Ms. Nunamaker in turn advised Principal Pennington of Ms. Garcia's whistleblower complaint.

21.     In retaliation for Ms. Garcia's protected activity, Principal Pennington began looking for an excuse to terminate Ms. Garcia.

**Principal Pennington used a January 17, 2020 incident as a pretext for terminating Ms. Garcia for retaliatory reasons and in doing so treated her less favorably than a similarly situated African American male teacher.**

22.     During the week of January 13, 2020 teacher Paul Saine (African American male) told Ms. Garcia and another teacher, Kelli Vukovic-Burkhardt, that he had disclosed to Principal Pennington that he had yelled at his class ***"to sit your bad asses down!"*** According to Mr. Saine, in response to his admission, Principal Pennington did not discipline him but simply said "don't worry about it, I have your back."

23.     On January 17, 2020, Ms. Garcia was watching Ms. Vulovic-Burkhart's class. During this period of time, Ms. Vukovic-Burkhardt came back to her class several times to inform **student La'Dora Howard** that if she did not have the money for "Dress Down Day" she was to go to the front office and call her mother to take her home. After Ms. Howard continued to refuse to go to the front office, Ms. Garcia escorted Ms. Howard up the school hallway in the direction of the main office. When Ms. Garcia reached her classroom, she turned to Ms. Howard and instructed her to **"get her ass up front."**

24.     Subsequently, Ms. Howard went to the front office and called her mother to pick her up from school. During this call, Ms. Howard also complained to her mother about what Ms. Garcia had said to her. Ms. Howard's mother then called Ms. Pennington demanding to meet with her about the incident. In response to the mother's complaint, Principal Pennington asked Ms. Garcia for her side of the story. Ms. Pennington then ordered Ms. Garcia to immediately leave the school because she did not want her to be there when the mother came in to talk with her.

25.     After Ms. Pennington met with Ms. Howard's mother, she did not give Ms. Garcia an opportunity to defend herself. Nor did she follow the progressive system of discipline set forth in HSA's Employee Handbook.  Instead, Ms.Pennington called Ms. Garcia at home and abruptly told her that she "was letting her go because of poor classroom management."

**Because Principal Pennington had treated her less favorably than Mr. Saine, Ms. Garcia dual filed a discrimination charge with the OCRC and the EEOC**

26.     On January 29, 2020, Ms. Garcia filed her sex discrimination and reverse race discrimination charge with the OCRC and the OCRC.

27.     On February 21, 2020, HSA submitted its position statement responding to Ms. Garcia's OCRC charge. HSA attempted to use a false narrative that Principal Pennington's termination decision was based on Ms. Garcia's having previously engaged in **four "serious incidents."**

### In retaliation for Ms. Garcia's filing her discrimination charge, HSA appealed Ms. Garcia's successful unemployment claim

28.     Prior to filing her discrimination claim Ms. Garcia filed her January 21, 2020 Application for Determination of Benefit Rights.

29.     On March 18, 2020 the Director issued his Redetermination Decision allowing Ms. Garcia's Application. The Director held that HSA had discharged Ms. Garcia without just cause in connection with her work.

30.     However, in retaliation for Ms. Garcia's filing her discrimination charge, HSA filed an April 3, 2020 appeal of the Director's Redetermination Decision.

**During the April 17, 2020 hearing on HSA's appeal, Principal Pennington presented a false narrative of the facts to try and cover up HSA's lack of just cause to terminate Ms. Garcia.**

31.     Principal Pennington was the only witness who testified in support of HSA's appeal. Because of problems with her cell phone, Ms. Garcia was unable to participate in the telephone hearing. Despite Ms. Garcia's inability to offer testimony on her own behalf, Hearing Officer Jared Wade nevertheless went forward with the hearing.

32.     Principal Pennington testified that she decided to terminate Ms. Garcia allegedly because she made inappropriate comments to students on *two* occasions on December 13, 2019 and on January 17, 2020. Principal Pennington's testimony was not credible because the

undisputed facts show that Principal Pennington targeted Ms. Garcia for termination after she filed a whistleblower complaint against her with ESC of Lake Erie West.

33.     Principal Pennington's reliance on Ms. Garcia's isolated December 13, 2019 comment to her students that if they did not stop fighting with one another, "she might kill herself" was  misplaced because Assistant Principal Glenn previously determined that this comment did not warrant disciplinary action. Similarly, Principal Pennington's reliance on Ms. Garcia's January 17, 2020  **"get her ass up front."** comment to student La'Dora Howard was misplaced because she had previously excused Mr. Saine's **"sit your bad asses down!"** comment which he made to his entire class.

**Ms. Garcia appealed Hearing Officer Wade's decision and his Notice of Overpayment**

34.     On May 4, 2020, Hearing Officer Wade issued his decision reversing the Director's Redetermination decision and issued a Notice of Overpayment.

35.     On May 26, 2020, Ms. Garcia filed her Request for Review of the Hearing Officer's decision with the UCRC. Ms. Garcia argued that in ruling that HSA had just cause to terminate her, the Hearing Officer misapplied the applicable Ohio case law defining just cause for purposes of R.C. 4141.29 (D)(2)(a).

36.     On June 3, 2020, the ODJFS Office of Unemployment Insurance Operations issued its Determination that Ms. Garcia has been overpaid $656.00 in benefits to which she was not entitled.

37.     On June 6, 2020, the UCRC issued its decision disallowing Ms. Garcia's Request for Review.

38.     On June 8, 2020, Ms. Garcia filed her Notice of Administrative Appeal in *Garcia*

*v. Horizon Science Academy, et al.,* Montgomery County Court of Common Pleas Case No. 2020

CV 02628. Subsequently on October 13, 2020, s. Garcia filed her Assignments of Error and

memorandum in Support.

### FIRST CAUSE OF ACTION
### Whistleblower retaliation in violation of Ohio R.C. 4113.52
### (Against Defendants Concept Schools, HSA-Dayton, and ESC of Lake Erie West)

39.     Ms. Garcia realleges the foregoing paragraphs as if fully rewritten herein.

40.     "Ohio's Whistleblower statute provides an employee protection from employer

retaliation under certain circumstances when the employee reports activity of fellow employees in the

workplace." *Fox v. City of Bowling Green*, 76 Ohio St. 3d 534, 668 N.E.2d 898, 901 (Ohio 1996). The

statute "was designed to give whistleblowers some protection in Ohio's employment-at-will environment."

*Id*. at 902.

41.     "In order to establish a violation of the Ohio whistleblower statute, a plaintiff must first make

a prima facie case by showing that 1) he or she engaged in activity which would bring him or her under the

protection of the statute, 2) was subject to an adverse employment action and 3) there was a causal link

between the protected activity and the adverse employment action." *Klepsky v. United Parcel Serv*., *Inc*.,

489 F.3d 264, 271 (6th Cir. 2007) (internal quotation marks omitted); *see also Bennett v. Columbiana Cnty*.

*Coroner*, 2016-Ohio-7182, 72 N.E.3d 242, 255 (Ohio Ct. App. 2016).

42.     Section (B) of the Ohio Whistleblower Statute, in the words of the Ohio Supreme Court,

"carries the statute's punch"—"what the employer may not retaliate against, and what actions bring about

employer liability under the statute." *Fox*, 668 N.E.2d at 901. R.C. 4113.52(B) governs retaliatory conduct

by an employer:

Except as otherwise provided in division (C) of this section, no employer shall take any

disciplinary or retaliatory action against an employee for making any report authorized by

division (A)(1) or (2) of this section, or as a result of the employee's having made any

inquiry or taken any other action to ensure the accuracy of any information reported

under either such division. No employer shall take any disciplinary or retaliatory action

against an employee for making any report authorized by division (A)(3) of this section if

the employee made a reasonable and good faith effort to determine the accuracy of any

information so reported, or as a result of the employee's having made any inquiry or

taken any other action to ensure the accuracy of any information reported under that

division.

43.     Ms. Garcia can establish a prima facie case of whistleblower retaliation under R.C. 4113.52. She engaged in protected activity when she filled her whistleblower complaint against Principal Pennington with ESC of Lake Erie West. After Ms. Garcia filed her whistleblower complaint, Principal Pennington terminated her. And there is a causal communication between Ms. Garcia's whistleblower complaint and Principal Pennington's termination decision.

44.     Based on respondeat superior, Concept Schools and HSA-Dayton are responsible for Principal Pennington's whistleblower retaliation

45.     As a proximate result of Defendants' whistleblower retaliation of Ms. Garcia, she has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.


## SECOND CAUSE OF ACTION
### Sex discrimination in violation of Title VII and Ohio R.C. 4112.02(A)
### (Against Defendants Concept Schools and HSA-Dayton)

46.     Ms. Garcia realleges the foregoing paragraphs as if fully rewritten herein.

47.     Both federal and Ohio courts use the *McDonnel Douglas/Burdine* shifting burden of production framework to analyze sex discrimination claims. Under this framework, the employee must first establish a prima facie case of sex discrimination. If the employee satisfies this burden, the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for terminating the employee. If the employer satisfies its burden, the burden of production shifts back to the employee to prove that the employer's articulated reason is a pretext for sex discrimination.

48.     Ms. Garcia can establish a prima facie case of sex discrimination. She is a member of the protected class, she suffered an adverse employment action, she met the employer's legitimate job expectations at the time of the adverse employment action, and she was treated differently than similarly situated employees outside her protected class. In its OCRC position statement, HSA did not challenge Ms. BGarcia's ability to establish a prima facue case of sex discrimination.

49.      When Principal Penninton terminated Ms. Garia, the articulated reason she gave for terminating her was "poor classroom management."

50.     When an employer provides conflicting explanations for terminating an employee, that is proof of pretext. *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133 U.S. 147, 147-148 (2000) (Inconsistencies create an inference of pretext, which is ordinarily evidence that the employer is concealing an unlawful motive). *See also Loveless v John's Ford, Inc.,* 232 Fed. App'x 229 *(4th Cir. 2007) (unpublished) (*proffered explanation at trial, poor performance, contradicts reason given to the employee at termination), *Cichewicz v. Unova Indus. Auto. Sys. ,* 92 Fed. App'x 215, 220 *(6th Cir. 2004) (* "As a number of courts have explained, evidence of pretext may consist of a defendant's changing explanations."); *Fox v. Certainteed Corp.* 198 F.3d 245 *(6th Cir. 1999) (*evidence of falsity and inconsistency in the employer's stated reason for the decision raises an inference of pretext); *Herbst v. Howard v. BP Oil Co., Inc.,* 32 F.3d

<u>520, 526-28</u> (11th Cir. 1994) *(Inconsistencies in the context of unwritten criteria, and individualized rationales for decisions articulated only after the fact, enough to create a jury question); and *EEOC v. Pape Lift, Inc.*, <u>115 F.3d 676, 680</u> (9th Cir. 1997) (The court said that an employer with a legitimate, nondiscriminatory reason for an adverse employment action ought not to have such a problem in keeping its story straight.). That is precisely what HSA has done in this case. Although on January 17, 2020 Principal Pennington told Ms. Garcia that "she was letting her go because of poor classroom management," on page 2 of its position statement HSA gives a conflicting explanation for Ms. Garcia's termination by asserting that "Ms. Garcia's Termination of Employment Form reflects she was discharged due to insubordination, offensive language, and unsatisfactory job performance."

51.     As a proximate result of Defendants' whistleblower retaliation of Ms. Garcia, she  has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

### THIRD CAUSE OF ACTION
### Reverse race discrimination in violation of Title VII and Ohio R.C. 4112.02(A)
### (Against Defendants Concept Schools and HSA-Dayton)

52.     Ms. Garcia realleges the foregoing paragraphs as if fully rewritten herein.

53.     To establish a *prima facie* case of reverse-race discrimination, a plaintiff must prove the following elements: "(1) background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority; (2) [she] was qualified for [her] job; (3) [she] suffered an adverse employment decision; and (4) [she] was treated differently than similarly situated employees of a different race."*Allgeyer v. City of Cincinnati,* <u>2019 U.S. Dist. LEXIS 55242</u>, at * 9-10 (S.D. Ohio 2019), citing *Fletcher v. U.S. Renal Care, Inc.*, <u>240 F.Supp.3d 740, 748</u> (S.D. Ohio, 2017) (citing *Nelson v. Ball Corp.*, <u>656 Fed. Appx. 131, 134-135</u> (6th Cir. 2016) (internal quotations and citations omitted). Ms. Garcia can establish all of these elements.

54.     HSA-Dayton is the unusual employer who discriminates against white employees. Principal Pennington has a pattern or practice of treating white teachers less favorably than similarly situated African American teachers. For example, although Principal Pennington helped Renee Love (African American teacher) whenever she asked for help when her students would leave her classroom, Principal Pennignton did not offer the same help to white teachers. Also, as discussed above, although HSA's rules prohibit teachers from abusing students, Principal Pennignton did not terminate Paul Saine (African American teacher) for yelling "sit your bad asses down now!" at his entire class but in contrast terminated Ms. Garcia for telling student La'Dora Howard to "get your ass upfront."

55.     Regarding the second element of Ms. Garcia's reverse discrimination claim, she was qualified for her teaching position.

56.     Regarding the third element, HSA terminated Ms. Garcia's employment.

57.     Finally, regarding the fourth element of her claim, HSA-Dayton, through Principal Pennington, treated Ms. Garcia differently than similarly situated African American employees.

58.     As a proximate result of the HSA's reverse race discrimination, Ms. Garcia has suffered and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

**FOURTH CAUSE OF ACTION**
**Retaliation in violation of Title VII and Ohio R.C. 4112.02 (I)**
**(Against Defendants Concept Schools and HSA-Dayton)**

59.     Ms. Garcia realleges the preceding paragraphs as if fully rewritten herein.

60.     Both Title VII and Ohio R.C. 4112.02 (I) prohibit employers from retaliating against employees for engaging in protected activities.

61.     In order to prove a prima facie of retaliation, an employee must establish the following elements: (1) she engaged in protected activity; (2) the employer knew about the protected activity; (3) the

employer took some adverse employment action against the employee; and (4) the "but-for" causation standard: "but for" a retaliatory motive, the employer would not have taken the adverse action.

62.     The "but-for" causation standard does not require that retaliation be the "sole cause" of the action. There can be multiple "but-for" causes, and retaliation need only be "*a* but-for" cause of the materially adverse action in order for the employee to prevail. The Supreme Court has explained how "but-for" causation can be demonstrated even if multiple causes exist:

> "[W]here A shoots B, who is hit and dies, we can say that A [actually] caused B's death, since but for A's conduct B would not have died." *LaFave* 467-468 (italics omitted). The same conclusion follows if the predicate act combines with other factors to produce the result, so long as the other factors alone would not have done so-if, so to speak, it was the straw that broke the camel's back. Thus, if poison is administered to a man debilitated by multiple diseases, it is a but-for cause of his death even if those diseases played a part in his demise, so long as, without the incremental effect of the poison, he would have lived.

*Burrage v. United States*, 134 S. Ct. 881, 888-89 (2014) (citing *State v. Frazier*, 339 Mo. 966, 974-975, 98 S.W. 2d 707, 712-713 (1936)).

63.     Ms. Garcia can establish all of the elements for her retaliation claim. She engaged in protected activity by filing her EEOC/OCRC discrimination charge of discrimination against HSA-Dayton. HSA-Dayton knew about her charge and responded to it. In retaliation for Ms. Garcia's filing her discrimination charge, HSA appealed the April 3, 2020 Director's Redetermination Decision granting her unemployment compensation benefits. Finally, retaliation was "*a* but-for " cause of HSA's  adverse action.

64.     As a proximate result of Defendants' whistleblower retaliation of Ms. Garcia, she  has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

**FIFTH CAUSE OF ACTION**
**Aiding and abetting discrimination - R.C. § 4112.02 (J)**
**(Against all of the individual Defendants))**

65.     Ms. Garcia realleges the preceding paragraphs as if fully rewritten herein.

66.     Ohio Rev. Code Section 4112.02 provides, in pertinent part, that:

It shall be an unlawful discriminatory practice:

\*                   \*                   \*

(J)     For any person to aid, abet, incite, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice ….

67.     In *Genero v. Central Transport, Inc.* (1999), 84 Ohio St.3d 293,  703 N.E. 2d 782 (Ohio 1999), the Ohio Supreme Court ruled that the plain language of Chapter 4112, particularly the definition of "employer,"imposes individual liability for discriminatory conduct. Ohio Rev. Code Section 4112.01 (A)(2) defines "employer" to include "any person acting directly or indirectly in the interest of the employer."

68.     Ms. Garcia can prove that each of the individual Defendants are guilty of aiding and abetting FRMC's age discrimination against her based on the Cat's Paw theory of liability. In *Staub v. Proctor Hospital,* 131 S. Ct. 1186 (2011),  the Supreme Court held that under the Cat's Paw theory an employer may be liable for a supervisor's discriminatory animus when an independent decision-maker merely rubber-stamps the supervisor's recommended adverse employment action. The Cat's Paw theory applies when a biased supervisor uses the formal decision-maker as a dupe to trigger a discriminatory employment action. In this case, Principal Pennington used Concept Schools' upper management (Director of Primary Education Tamara Lieb and President/CEO Sedat Duman) and Assistant Principal Andrew Glenn as her

dupes to trigger its decision to terminate Ms. Garcia for retaliatory and discriminatory reasons. ESC of Lake Erie West and its management ( Superintendent Sandra Frisch and Regional Technical Assistance Representative Ranay Nunmaker) also aided and abetted Principal Pennington with her retaliatory and discriminatory actions.

69.     As a proximate result of the individual Defendants' aiding and abetting Principal Pennington's retaliatory and discriminatory plan to terminate Ms. Garcia, she has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

## SIXTH CAUSE OF ACTION
### Wrongful Discharge in violation of public policy
### (Against Concept Schools, HSA-Dayton, and the Individual Defendants)

70.     Ms. Garcia realleges the preceding paragraphs as if fully rewritten herein.

71.     As evidenced by Title VII of the Civil Rights Act of 1964 and the Ohio Civil Rights Act, this nation and the State of Ohio has a clear public policy prohibiting employment discrimination.

72.     Ms. Garcia is the victim of sex discrimination, reverse race discrimination, and retaliation.

73.     All of the members of Concept Schools, HSA-Dayton, and  ESC of Lake Erie West management who participated in the decision to discriminate and retaliate against Ms. Garcia are guilty of the "bystander effect" because they stood by and did nothing to stop Principal Pennington from discriminating and retaliating against Ms. Garcia because of her sex, race, and protected activities.

74.     Defendants' actions were willful, malicious, and/or in reckless disregard of Ms. Garcia's legal rights.

75.     As a result of Defendants' wrongful discharge of Ms. Garcia in violation of public policy,  Ms. Garcia has been and continues to be damaged and is entitled to compensation.

# SEVENTH CAUSE OF ACTION
## Wrongful Discharge - Breach of an implied contract
### (Against DefendantS Concept Schools and HSA-Dayton)

76.     Ms. Garcia realleges the preceding paragraphs as if fully rewritten herein.

77.     Ohio courts recognize implied contract as an exception to the employment-at-will doctrine. Whether explicit or implicit contractual terms have altered an at-will-employment agreement depends upon the history of the relations between the employer and employee, as well as the facts and circumstances surrounding the employment relationship. *Wright v. Honda of Am. Mfg., Inc.*, 73 Ohio St. 3d 571, 574, 1995-Ohio-114, 653 N.E. 2d 381. The relevant facts and circumstances include "the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question * * *." *Mers v. Dispatch Printing Co.*, 19 Ohio St.3d 100, 483 N.E.2d 150 (1985), paragraph two of the syllabus. *See also Kelly v. Georgia-Pacific Corp.,* 46 Ohio St.3d 134, 545 N.E.2d 1244 (1989), paragraph

two of the syllabus.

78.     Both Concept Schools and HSA-Dayton have adopted several policies which constitute Ms. Garcia's implied contract. These policies include, but are not limited to, the Equal Employment Opportunities Policy and the Progressive Discipline policy contained in HSA-Dayton's Employee Handbook.

79.     Ms. Garcia can establish all the elements for a breach of an implied contract of employment claim because: (1) she had an implied contract of employment based on Concept Schools and HSA-Dayton's policies; (2) she performed her obligations under this implied contract; (3) Concept Schools and HSA-Dayton breached the implied contract by not following its own policies and by allowing Principal Pennington to discriminate and retaliate against Ms. Garcia; and (4) Ms. Garcia has and continues to suffer damages from Concept Schools and HSA-Dayton's beach of the implied contract.

80.     As a result of Concept Schools and HSA-Dayton's breach of her implied contract of employment, Ms. Garcia has suffered and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

### EIGHTH CAUSE OF ACTION
**Wrongful Discharge - promissory estoppel**
**(Against Defendant FRMC)**

81.     Ms. Garcia realleges the preceding paragraphs as if fully rewritten herein.

82.     The doctrine of promissory estoppel is intended to stop a promisor from arguing that the underlying promise that was made should not be legally enforced. Promissory estoppel arises when a defendant makes "'[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance.'" *Hortman v. Miamisburg,* 110 Ohio St. 3d 194, 2006 Ohio 4251, Paragraph 23, <u>852 N.E. 2d 716</u>, quoting Restatement of the Law 2d, Contracts, Section 90, at 242 (1981).

83.     To prove a claim for promissory estoppel, a plaintiff must prove: (1) a clear, unambiguous promise; (2) that the person to whom the promise was made relied on the promise; (3) that reliance on the promise was reasonable and foreseeable; and (4) that the person claiming reliance was injured as a result of reliance on the promise.

84.     Ms. Garcia can establish these elements regarding Concept Schools and HSA-Dayton's breach of promises it made to her in its personnel policies. These promises include: the promise that she would not be discriminated against because of her sex or race adnd that she would not be retaliated against for engaging in protected activity. Ms. Garcia relied on these promises. Ms. Garcia's reliance on Concept Schools and HSA-Dayton's promises was reasonable and foreseeable. Ms. Garcia has been and continues to be injured as a result of Concept Schools and HSA-Dayton's breaching the promises they made to her.

85.     As a proximate cause of Concept Schools and HSA-Dayton's breaching the promises they made to Ms. Garcia, she has suffered and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

### NINTH CAUSE OF ACTION
### Fraud and Misrepresentation
### (Against Concept Schools and HSA-Dayton)

86.     Ms. Garcia realleges the foregoing paragraphs as if fully rewritten herein.

87.     As discussed above, Concept Schools and HSA-Dayton made a series of promises to Ms. Garcia. These promises include: the promise that she would not be discriminated against because of her sex or race and that she would not be retaliated against for engaging in protected activity.

88.     Principal Pennington's abrupt decision to terminate Ms. Garcia violated the promises that Concept Schools and HSA-Dayton had made to her.

89.     Consequently, both Concept Schools and HSA-Dayton have committed the tort of intentional misrepresentation under Ohio law.

90.     Concept Schools and HSA-Dayton have also committed the tort of fraud under Ohio law.

91.     As a result of Concept Schools and HSA-Dayton's misrepresentation and fraud, Ms. Garcia has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

### TENTH CAUSE OF ACTION
### Intentional Infliction of Emotional Distress
### (Against all of the Defendants)

92.     Ms. Garcia realleges the foregoing paragraphs as if fully rewritten herein.

93.     "To establish a claim for intentional infliction of emotional distress, a plaintiff must demonstrate that the defendant, through extreme and outrageous conduct, intentionally or recklessly caused

the plaintiff severe emotional distress." *Mowery v. Columbus,* 10th Dist. No. 05AP-266, 2006-Ohio-1153, Paragraph 48.

94.     As discussed in the above Statement of Facts, all of the Defendants engaged in extreme and outrageous conduct against Ms. Garcia

95.     The Defendants' extreme and outrageous conduct caused Ms. Garcia to suffer severe emotional distress.

96.     Under the doctrine of respondeat superior, Concept Schools, HSA-Dayton, and ESC of Lake Erie West are vicariously liable for the acts of its employees because these acts were within the scope of their employment.

97.     As a result of the Defendants' intentional infliction of emotional distress, Ms. Garcia has and continues to suffer damages for which she is entitled to all of the appropriate remedies available to her.

## PRAYER FOR RELIEF

WHEREFORE, Ms. Garcia demands judgment against Defendants Concept Schools, Segat Duman, Tamara Lieb, Horizon Science Academy - Dayton, Alyce Pennington, Andrew Glenn, La'Dora Howard, La'Dora Howard's mother, Educational Service Center of Lake Erie West, Sandra Frisch, and Ranay Nunmaker as follows:

(a)     That Concept Schools and HSA-Dayton be ordered to immediately reinstate her to her former teaching position or to an equivalent position.

(b)     That Concept Schools and HSA-Dayron pay her any and all back pay and lost benefits she has suffered.

(c)     That she be awarded compensatory damages from Defendants in an amount to be determined at trial, but in no event less than $350,000.

(d) That she be awarded punitive damages in an amount sufficient to deter the Defendants from engaging in similar employment discrimination, wrongful discharge, and workplace torts in the future in an amount to be determined at trial, but in no event less than $700,000.

(e) That Concept Schools and HSA-Dayton be ordered to expunge her official personnel file and any and all other files kept on her by FRMC and any of its employees and agents.

(f) That all of the individual Defendants be ordered to attend remedial training regarding an employer's obligations not to discriminate and retaliate against employees and the preventive measures they need to take to avoid repeating this unlawful misconduct in the future.

(g) That she be awarded both pre-judgment interest and post-judgment interest.

(h) That she be awarded reasonable attorney's fees and costs from the Defendants.

(i) Finally, that she be awarded all other legal and equitable relief to which he may be entitled from the Defendants.

Dated: November 24, 2020

/s/ **_Peter K. Newman_**
Peter K. Newman (0010468)
THE NEWMAN LAW GROUP LLC
594 Garden Road
Dayton, OH 45419
Ph: 937.475.6282
Email: newmanlawgroup@gmail.com

_Attorney for Plaintiff_

## JURY DEMAND

Plaintiff demands a trial by jury

/s/ **_Peter K. Newman_**
Peter K. Newman (0010468)